Case No. 245603, Jerry Aldridge et al. v. Regions Bank. Oral argument not to exceed 15 minutes per side. Mr. Holyfield, you may proceed for the appellants. My three minutes of recorded. Yes. Thank you. Thank you, Your Honor. My name is Al Holyfield, and I represent the 93 appellants, in this case, one of which is Kimberly Grandin, the fact here is a former president of River Tuesdays  And I also have from my office, Stephanie Roberts, who is here. We're here to seek to enforce the terms of a trust that was negotiated on behalf of the 93 appellants. The district court determined that the appellants cannot enforce the terms of their trust under state or federal law. No matter how blatant the breaches were, the terms negotiated by the appellants just don't matter. They're illusory. And the breaches negotiated by the trust cannot be remedied. The district court opinion, except the appellants have, except for the fact whether a change of control occurred. So before this court, not the fact that was there actual harm to the participants, they lost millions. The issue was, there's just no remedy under state or federal law. And even regents filed an interpleader action regarding some of its actions regarding payments to the participants at the time, seeking court guidance. So there's not a question about should there have been payments or was the trust breached. The issue is, is there a remedy? Do you think regents would have qualified as an administrator who would have been subject to the ERISA fiduciary duties if this was not a top-down plan? It would have discretionary control over the assets, yes. So imagine that scenario. Do you think preemption would have applied then? You're raising, you're getting to the heart of the issue really, and that is, in this particular case, is what does it mean when a top-down plan is exempted from funding, vesting, fiduciary requirements? And so when it's accepted from those, does it mean the parties never? That's my point. Yes. So would you concede if it wasn't accepted from the federal fiduciary duty obligations that you couldn't bring duplicative in some respects to state law?  I would agree with that, Your Honor. So why should we think that Congress intentionally decided to exempt top-down plans from the fiduciary duty rules of the federal only to have them subject to a 50-state, state-by-state fiduciary duty? Well, Your Honor, the DOL and the IRS essentially put that in writing in the guidance, and it's referred to in our materials. The two departments that regulate the non-qualified plans, I mean, first, Congress exempted them. So there was some reason behind the exemption, right? So they don't have to go funding. And the reason that's given, and I'm reading from a risk advisory opinion, the DOL's opinion, that Congress recognized that these individuals, by virtue of their position, had the ability to sit at the table and negotiate the benefits, and they were to design, operate, and take the action to protect themselves. So nobody disputes you have a breach of contract plan under the First Amendment, right? I mean, if the federal plan, what you just talked about with the negotiation there, I think I'd be interested in what your friends on the other side say, but I think they would say, if the plan terms incorporated some type of state law, financial duty obligations, that the plan administrator would, at that point, be subject to them. But it wouldn't be a matter of state law of coercion. It would just be a matter of enforcing the plan terms. But you're not arguing that here. You're not trying to enforce the plan. Well, that was our second cause of action under ERISA, was to enforce the terms of the plan. I'm talking about your first one. Right. And your response to me is, Congress did not include executive employees subject to top-hat plans to the federal fischer's standards, which apply no matter what the contract says. Correct. Because Congress recognized that they could negotiate with their employer. That suggests to me that it was an intentional choice not to adopt state substantive standards, but just to give you the remedy of enforcing the plan. So you have those arguments. I agree with you. But it seems to me that suggests that preemption should apply. Well, there's two arguments I'll say opposing that. And I'll get to that. The second is the IRS, in their guidance, when they adopted the primary way that there is protection in that negotiation, is to adopt a rabbi trust. And the IRS promulgated Revenue Procedure 9264 and put out the model rabbi trust. In that trust, it says, this trust agreement shall be governed and construed in accordance with the laws of blank. And you were to fill in the state and put it in there, not the federal government, not ERISA. So the guidance that was given to the participants was protect yourself. And the trust document that was proposed says, apply state law. Now we're saying, you can't look at that guidance. Don't rely on anything the IRS says, evidently, if you're an executive. You can't rely on what the DOL said. And that's a couple of things. And so these parties did exactly what they were instructed to do. They created a rabbi trust, subject to the laws of Alabama. Ruby Tewsey's back. Do the terms of the plan, not the trust agreement, do the terms of the plan give beneficiaries the right to enforce the trust agreement? Because the trust agreement is just between the company and regions. Right. If the plan terms gave beneficiaries the right to enforce the trust, then you could pursue your remedies under kind of a contract theory, but it would be just for enforcement of the plan. Your Honor, let's jump straight to the case, I think, that directly answers your question, the Occidental case in the Fifth Circuit. That case, Your Honor, when it came up, the court was asked, there's the trustees of a trust. And the trustees, it was Wells Fargo. The employer said, hey, sell the assets. And they didn't. And the assets, basically sales and stock, they've lost $38 million because they delayed in the transaction. This is Occidental Petroleum versus Wells Fargo, 117th, Fed Fourth, 628th. That case went to the district court, went up to the Fifth Circuit, a Willett decision. Wilson was on that opinion. And they came back, and you know what's interesting in that case? Arista's not mentioned one time in that case. That case is before the federal court on diversity. They treat it as a contract matter. They did not mention Arista preemption one time. Well, is that because the parties didn't raise it? I mean, maybe they should have raised it in court. But I'm just saying it's interesting that case went up, and no one raised the jurisdictional question. That if you go with Judge Easterbrook, that preemption is really a jurisdictional question, right? If you go down that road, no one raised it in that issue. Certainly, one would argue Wells Fargo and Occidental Petroleum have competent counsel that they thought it was an issue to raise, and they didn't. So there are cases out there like that where you can go down a pure contract matter. And we've cited some other cases as well in our brief. But what about the contract here gives beneficiaries the right to enforce the trust? That's what I'm struggling with. The trust agreement itself suggests that the employee should not be considered a beneficiary. Well, Your Honor, let's take an action that situation happens routinely in the plan. Let's say an actuary does a benefit calculation for the plan, and they're going to do a calculation of what a defined benefit plan, what your benefit would be. And they're wrong, and they mess up. Right? That participant can sue for negligence on that actuary doing this, right? Because they've been directly harmed under state law. Now, right? That's a malpractice claim. So you're talking about a contract between the actuary and the plan.  But the participant's harmed, because they didn't get the money, right? But the service provider cases are usually contract disputes between the plan and an accountant. Usually. So is there a case where it is? That would be interesting. Is there a case where it is a third party beneficiary who's suing a service provider for the plan? Suing? There's a Mertens v. Hewitt. They were suing an actuary for negligence under that case. I'm sorry. Can you say the case? Mertens v. Hewitt, the Supreme Court case. And so, Your Honor, those cases are out there just because there's harm to the participant. They have, if you've been based on the action that was going, and Your Honor, everything you just raised, we tried to raise also as a ERISA claim, and still was told no. Why don't you, you didn't sue under the ERISA provision that says to enforce his rights under the terms of the plan. You sued under that one. Well, we sued under 50283, and we sued under to enforce the terms of the plan. And then it comes down to, are you getting an equitable remedy? And, Your Honor, that's typically against the plan administrator. That would be Rubio's case. That's the issue there, Your Honor. And this actually was, the reason the participants were harmed here is the trustees were asleep at the helm. This plan was amended. It was terminated. It was supposed to be distributed, distributed months before the bankruptcy occurred. And it never happened. This money would have never been in the trust had Regents done its job. That's the problem. So this trustee's liable here. And so switching to the ERISA equitable relief, the parties largely debate the meaning of equitable in the relevant statutory phrase. But the phrase says, you're not entitled to appropriate equitable relief in the abstract. You're entitled to other appropriate equitable relief to redress such violations. They're talking about ERISA violations. Or to enforce any provisions of this chapter or the terms of the plan. So I understand that, I don't think you're assuming to enforce any ERISA provisions because you recognize the top-heavy plans. So why is there a debate here? And I don't think you're assuming to enforce the terms of the plan because your entire argument is that, if we were, that would be preempted if we're suing over this trust agreement. Well, we're suing under the trust agreement. But Your Honor, I'll go back to the general principle that this court was laid down in international resources and in the Perry case, which is, you can't preempt a case unless you're gonna provide a remit. That's been the law in this circuit since 1989. And that would be proposition one. And proposition two, these participants, certainly the passage of ERISA was designed to enhance the retirement debt. Just to clarify, you think we should, I mean, maybe it's just hasn't been raised so it doesn't matter, but if your argument would be you are seeking other appropriate equitable relief to enforce the terms of the plan? Yes, that would include the trust. We're saying we're entitled to a remedy under either ERISA or the state law. And you can't say, I mean, that's been the law for 220 years under Marbury. What you're trying to make is if the trust agreement is somehow preempted, then that should qualify as part of the plan? Yes. All right, thank you, Your Honor.  Good morning. For the record, my name is John Nyman. I'm here representing the appellee, Regents Bank. May it please the court. The plaintiffs on appeal have emphasized their state law claims much more so than their ERISA claim. So it's worth keeping in mind that the plaintiffs filed this lawsuit in federal court, not state court. And the first count in that complaint was under ERISA, not state law. That prioritization of ERISA over state law made considerable sense. ERISA governs all aspects of employer retirement plans, including the trust that employers use to pay benefits under those plans. So if these plaintiffs had any right to the benefits from the Ruby Tuesday Top Hat plan and the associated trust, that right had to come from ERISA, not state law. Do you agree? Why couldn't they have sued under A1B to recover benefits due to them under the terms of the plan or to enforce rights under the terms of the plan? I think that was, in part, a wrong party problem, but also a wrong time problem. It may help bracket the issues to consider that, although- Why is it a wrong party problem? Because it doesn't say who the defendant has to be. As Mr. Holyfield earlier stated, the law generally recognizes that those A1B claims are brought against the administrator of the plan itself, which here would be Ruby Tuesday. Of course, that's what happened in Ruby Tuesday's bankruptcy proceedings. So sometimes the plan will delegate to an administrator and it's like an insurer or something. The number of relegates the insurer who's the administrator of the plan? If there's a delegation of that sort, then yes, an A1B. Why wouldn't regions be essentially the administrator? It seems like that's what was going on. Under the facts of this case, an A1B claim wasn't available. The plaintiffs have never asserted an A1B claim. But why isn't it legally available? That's the question we're trying to ask. What's the authority for that? Well, I think that if we put brackets on the facts of this case, we can come up with a hypothetical in which I think it's at least possible that there would be some claim available to plaintiffs or available to participants in a plan against the party-like regions. I'm not making any sort of firm representation about what the math would look like on this. But I think in 99% of cases involving top hat plans and rabbi trusts, adequate relief is going to be available against the party that stands in Ruby Tuesday's shoes in these circumstances. But we certainly could come up with facts that weren't presented in this case, where perhaps the rabbi trustee wasn't doing something they were required to do under the trust, where the party that stands in Ruby Tuesday's shoes, for whatever reason, was unwilling to enforce obligations on behalf of the rabbi trustee. And at that point in time, perhaps a participant would be able to claim that they've got a claim against the rabbi trustee. We just don't have those facts here, in part because, as I said earlier, the plaintiffs initially sued under A1B Ruby Tuesday. I say sued. They filed an objection in the bankruptcy proceedings. The bankruptcy judge overruled that particular objection. And when they did, the plaintiffs chose not to appeal. They instead settled with Ruby Tuesday and filed a separate lawsuit against Regions. They did so even though Regions' role had been far less significant. And even though the same bankruptcy court order that the plaintiffs failed to appeal and chose not to appeal had expressly directed Regions to distribute the corpus of the funds to Ruby Tuesday's general creditors, i.e. the bankruptcy estate. What do you think of my hypothetical? So your friend on the other side cites, I don't know if it's legislative history or the IRS rule that suggested that the reason why executives subject to top hat plans are exempt from the federal substantive fiduciary duties, which other people can't contract around, is because we think that the executives can contract for protection. And it would just be a contract action rather than a breach of fiduciary duty action. So that leads me to think that if the executives put fiduciary-esque obligations in the contract, that those would be enforceable. But it just wouldn't be as a matter of federal non-waivable fiduciary duty provisions. It would be as a contract. That seems quite feasible to me what they're talking about. Yes, I think that's quite feasible. And actually, Mr. Holyfield earlier referred to the model rabbi trust that the IRS has promulgated. One significant difference between that model trust and the trust that we're dealing with here is that one potential provision that the IRS sets forth has languages exactly of the sort that you are positing, Judge Murphy. It is the language from ERISA that establishes certain components of a fiduciary duty. I think- So how would that, if that contractual arrangement came about, would it still be an ERISA-causative? So it wouldn't be a state law breach of contract because ERISA occupies the field or whatever, the complete preemption or whatever. I don't want to get into it, but would it be an ERISA-causative action under A1B? If you thought that there's this contractual, creative fiduciary duty obligation, if you thought an administrator breached that fiduciary contract obligation in the way that they processed the funds, what would be the person's cause of action? Yes. Yes, I think it would be either under A1B, or perhaps it would be under A3 as well, an action to enforce the terms of the contract under A3. What it wouldn't be is a straight-up breach of fiduciary claim under ERISA because 1101 takes that out of the equation for compact plans. So why can we kind of say that that's what's going on here? Because the contract doesn't establish that duty here at all, and also because the plaintiffs haven't raised that point. I mean, the problem with the plaintiff's case is not that they sought to enforce the plans or even the trust under ERISA. The problem was that they were seeking remedies that ERISA simply doesn't provide. The sole provision of ERISA that plaintiffs cited here was 1132A3, and they concede that the only conceivable basis on which they could obtain equitable relief here would be under an equitable surcharge theory. They're not seeking to enforce the terms of the plan. They're seeking what amounts to straight-up compensatory damages of $35 million. That kind of relief is something that 1132A3 doesn't provide.  But if they have, do you think that this is just a mistake? They could have sued under A1B to collect those amounts? No, I don't think it's just a mistake because of the facts that I alluded to earlier where we were in the process. The problem is we have a bankruptcy court order that the plaintiffs have chosen not to appeal that dissolves the trust effectively and tells regions that it has to distribute the $35 million or whatever the corpus of the trust was at that point in time to Ruby Tuesday's general creditors. At that point in time, plaintiffs can't turn around and file a lawsuit, and they didn't purport to file a lawsuit seeking prospective injunction against regions. There was nothing for the prospective injunction to operate against. All they have at that point in time is this claim for $35 million in compensatory damages that ERISA simply does not provide under an equitable surcharge theory and under the only provision of ERISA, they cite 1132A3. So even if the plan had included what you say the model plan requires, or it suggests, which is baking the fiduciary duties into the contract, if it had done that, you're still saying they couldn't have sued under these circumstances? Well, I haven't considered what would have happened if we had a contract that provided that language and if we had the plaintiffs seeking under 11A3 to prospectively enforce the trust at that point in time. The problem there is the plaintiffs are still seeking straight up money damages. They're not seeking some sort of prospective ongoing release. I'm not sure 1132A3 applies there. I mean, and again, all this is bound up in- What is a plaintiff in this situation supposed to do? I mean, their claim is that you were supposed to fully fund the trust once there was a takeover of Ruby Tuesday. You didn't do that. That cost them a lot of money. What are they supposed to do? Nothing? They can't do anything? Well, I mean, to be clear on the facts of this case, we very much dispute that we were informed that there had been a change of control. Very much dispute that we- Yes, yes. So in a case of that sort, Mr. Holyfield stressed the notion that the IRS has recognized that his clients, former executives of the company, are more sophisticated perhaps than your average ERISA plaintiff. It is- Sure, but that just means they're sophisticated so they can avail themselves of some legal remedies that ordinary people wouldn't be able to figure out. And we're all here fairly learned in the law having a hard time figuring out what that remedy is. Right, so the fairly sophisticated former executives can monitor the company. And if, for example, they believe that the company hasn't complied with its obligations under the trust and the plans, they can say, for example, hey, wait a minute, there has been a change of control, yet there's been no notification given to Regions of the change of control, and Regions hasn't started doing the things that it's supposed to do when there is a change of control. What's the remedy there? That's 1132A3, perspective injunctive relief, either to enforce the plan itself or some sort of injunction saying, hey, Ruby Tuesday, inform Regions of the change of control. Hey, Ruby Tuesday, you passed a resolution to fully fund the trust, but you haven't done it, fully fund the trust at that point in time. That's the most obvious remedy that's provided by 1132A1B or 1132A3. The remedy that's not available is this equitable surcharge notion that simply amounts to compensatory damages. Would the rabbi trust actually be considered a traditional trust under state law? It seems like an odd creature, and the reason I say that is, like I just looked up restatement provisions on how to create trusts, and there has to be a beneficiary. And I think that the reason why the rabbi trust is separated from the company, but it's weird because you don't guarantee that the funds are being set aside and can't be obtained from the company's creditors. So they're not necessarily set aside for the beneficiaries. My question is, is that like a traditional trust or is that just something special that's in ERISA? Well, whether it's unique to ERISA, I don't know, but it is unlike any traditional trust precisely because in a traditional trust, the fiduciary duty lies solely to the beneficiaries, right? The trustee of the trust can't do anything that operates against their interest. Despite the breach of a trust agreement, if you took all the money and gave it to somebody else and not the beneficiaries. Exactly, but that's exactly, but rabbi trusts necessarily are conditioned on the premise that if the employer goes insolvent, as happened with Ruby Tuesday here, then the money has to go back to the general creditors. So the fact that the trustee basically has this dual obligation, on the one hand to the beneficiaries and on the other hand to the creditors, makes this quite unlike anything that we see under ordinary state trust law. And in fact, the Fifth Circuit litigation, or at least the Fifth Circuit, Mr. Holyfield earlier referenced that they've dealt with rabbi trusts in the past. The courts there have made the observation that these really aren't trusts in any traditional sense of this. So I was curious about this as a matter of the, I mean, if the state law breach of trust claim was not preempted, would it actually be a viable state law breach of trust claim? Because this may well not be considered a, under Tennessee law, an actual trust. You can call something a trust and it doesn't make it a trust unless it fits the obligations of state trust law. Yeah, I mean, fair enough, but of course we contend and we believe it's pretty clear that ERISA preempts this area. ERISA controls the plan and the trust and that the plan is part, the plan, or I should say the trust, is part and parcel of the plan, adjunct to the plan. The plaintiff's preemption argument relies almost exclusively on the notion that there's daylight between the plan and the trust for these purposes, but that daylight simply doesn't exist. How would you, so the best argument, I think, on the other side would be the trust agreement is essentially a contract between Ruby Tuesday and Regence, like any other contract between a plan and a service provider, whether it's a bank or somebody else, if I'm an accountant. And I think the courts quite clearly hold that a plan's suit against the bank, say, or something for breach of contract would not be preemptive. Yes, so those cases hold that ERISA preemption does not apply to professional service contracts that are independent of the plans. A trust of this sort, a rabbi trust of this sort, is not a professional service contract and it's not independent of the plans. The trust and plan documents both specify that the function of the trust is to provide for payment of benefits under the plans and to otherwise assist Ruby Tuesday with its obligations under the plans. That's not an accounting, tax, or legal services agreement. That's an agreement to perform services that are central to the plans and it's certainly the opposite of independent of the plans. I see that my red light is on. Any more questions? All right, thank you very much. Your rebuttal. Thank you, Your Honor. Real quickly, I'll try to bounce around and just hit some of the issues that were just raised. One, the trust actually does talk about paying the persons, you know, it does have provisions. For instance, section 7B, the trustee shall make any distribution required pursuant to the terms of this trust agreement by mailing his check to the specified address to the person's owner. I mean, it gives that language that you would expect to see in the trust, which are the claimants here, which are the people here. So the trust does direct that. In the case, I think I would point the court to, in addition to the Occidental, which was a state law contract, going back to what you were just saying, Judge Murphy, on that issue, and I'm saying that would make sense at least to the Fifth Circuit on that case. If the other side of that equation is the Buster case, which we cited in the materials, which is a case from the Northern District of California, and it says, and they were looking at the Ninth Circuit law on this issue and struggling just like this oral argument's been struggling with it. What does this look like? And they raised an interesting point. They said that the producer requirements that decided referring to the other decisions and the priority decision for the U.S. Supreme Court said is intended to distinguish between the plan administrator and an employer and cannot be stretched, and here's the issue, to distinguish between Robin Hill plan administrators and the peculiar exception of Top Hat plan administrators, what they're dealing with here. And it goes on, notably, the decision side above did consider Top Hat plans all post-verity, and they're trying to figure out what decision has really wrestled with the non-qualified plan in this area, and they're struggling because there's not a lot of case law out there on this issue about how to go deal specifically. Is this a contract claim, or is this, and he goes back to the complaint, well, that's why we cited both, Your Honor, because of this, I mean, it was not an accident. We saw that this was coming, but they go on to say in bluster, this order, denying the motion to dismiss and allowing it to proceed under ERISA on this case, not, you know, contract law like the Fifth Circuit, this order holds consistent with the uniform print of decisions addressing 50283 in the context of Top Hat plans that equitable remedies there under are available for a breach of the general good faith standard of contract law. And so they're understanding this issue, and the whole premise of our case is this circuit has clearly stated for 30 plus years, there's got to be a remedy. And certainly, ERISA was not passed to enhance the rights of employees because of their retirement benefits. And the passage of that act is indeed the thing that causes the harm, because if there was no ERISA, we'd be suing under state law. And there would be no question here in this case wouldn't be before this court. But the passage of ERISA has left 93 participants, Your Honor, 15 who are now deceased while this case has been dealing with, without their retirement benefits. And they're being told you can't sue under state law, under any theory. And you can't sue under ERISA. All right. Any questions? All right, thank you very much. Thanks to both sides for very helpful arguments in what is a difficult and unusual case. We appreciate it. It's very helpful. And you'll get a decision in due course. Thank you very much.